HENRY H. SCHUFELDT AND OTHERS, RESPONDENTS, *v.* ALBERT SCHNITZLER AND HERMAN MATHIAS, APPELLANTS.

*Action to rescind the sale of goods on the ground that the purchaser bought them fraudulently, when insolvent—what evidence is admissible to rebut the presumption of fraudulent intent—when a purchase of goods by one who knows himself to be insolvent is fraudulent.*

Where, in an action brought to set aside a sale of goods, on the ground that the defendant was at the time of the purchase insolvent, and that he bought them with an intent not to pay for them, it is shown that the defendant was in fact insolvent at the time of the purchase, and that, before the expiration of the credit upon which they were sold, he made a general assignment, it is competent for the defendant to show that a large portion of his debts were held by personal friends, that none of his creditors were pressing him, and that other friends had promised to loan him money, as these facts tend to rebut the presumption of fraud, and to show that he had reasonable grounds for hoping that he might retrieve his condition and tide over his embarrassments.

A trader who is hopelessly insolvent, and knows that he cannot pay his debts, and that he must fail in business, and thus disappoint his creditors, cannot honestly take advantage of a credit induced by his apparent prosperity, and purchase property which he has every reason to believe he can never pay for; and the intent to cheat may properly be inferred by the jury, from the fact of a purchase having been made under such circumstances.

APPEAL from a judgment in favor of the plaintiffs, entered upon the verdict of a jury.

*A. Blumenstiel* and *Morris Hirsch,* for the appellants.

*E. P. Johnson,* for the respondents.

DAVIS, P. J.:

This action is brought by the plaintiffs against Herman Mathias, and Albert Schnitzler as his general assignee, to recover possession of ten barrels of liquors sold by the plaintiffs to the defendant Mathias upon a credit of sixty days. The sale was made December 3, 1877, and the goods were shipped at Chicago and arrived in New York December 15, 1877. Mathias had previously accepted a draft for their price, payable sixty days from date. On December

26 following, Mathias made an assignment for the benefit of his creditors, to the defendant Schnitzler, and delivered the liquors in question as a part of his assigned property. On January 17 following, the plaintiffs demanded the goods of Schnitzler, who refused to deliver them. No representations, either fraudulent or otherwise, were made at the time of the sale and purchase. On the contrary, the sale seems, from the evidence in the case, to have been pressed upon Mathias, and not sought for by him. The only question in the case is whether the purchase by Mathias was made under such circumstances that it could be treated as fraudulent by reason of his insolvency and known inability to make payment therefor. Evidence was given on the part of the plaintiff which, it was claimed, tended to show that at the time of the purchase Mathias was largely indebted beyond his means to pay, and that he knew that he could not pay his debts, and that he must fail in business and disappoint his creditors, and with such knowledge took advantage of a credit, induced by his apparent prosperity, to obtain property which he had every reason to believe he could never pay for. This evidence consisted almost wholly of proof of the amount due and owing by Mathias, of the amount of his assets both in goods and credits, and of their value, and of the amount of moneys borrowed of different parties previous and subsequent to his purchase of plaintiffs and prior to his failure. There was enough, we think, of this evidence, to carry the case to the jury upon the question of fraud. No exceptions whatever were taken to the charge in the case, and therefore the correctness of its legal propositions is not open to our consideration. There was no exception taken to the denial of the motion for a new trial. There is nothing, therefore, in the case for us to consider, beyond the exceptions taken to the rulings made during the trial upon the admission and rejection of evidence.

The defendant, Mathias, was called as a witness on behalf of himself and his co-defendant. He testified in substance, that at the time of the purchase he had no intention to defraud the plaintiffs by obtaining their goods without payment, and that he had at that time no expectation of failing to continue in his business and meet his debts, as he relied upon his ability to continue it

by reason of loans promised by friends, which he had no doubt of being able to obtain. He also testified that he did not know, at the time of such purchase, that he was insolvent; that he had no intention of making the assignment or of going into bankruptcy; and at that time expected to be able to work through his difficulties and embarrassments. It was shown that he was at that time indebted for borrowed money in the sum of $37,000. He was asked this question: "How much of that was due your personal friends?" This question was objected to, the objection sustained, and the defendant excepted. He was then asked: "Were you at that time actually pressed by any of your creditors for the amount of money you owed them?" This was also objected to, the objection sustained, and the defendants excepted. After naming several persons who, he testified, had promised to make him loans, he was asked: "What other persons promised to loan you money?" This was objected to as immaterial, the objection sustained, and the defendants excepted. We are not able to see why each of these questions was not proper in itself, and why the answer ought not to have been received. The question for the jury was not whether Mathias was or was not actually insolvent at the time of the purchase, nor whether he was or was not embarrassed or in difficulty in meeting his existing indebtedness, although those were facts elementary and important in aiding the jury in arriving at the real question upon which they were to pass. It has been uniformly held that known insolvency, and the omission of the purchaser to disclose the fact of such insolvency, are not in themselves sufficient to avoid a sale on the ground of fraud. (*Nichols* v. *Pinner*, 18 N. Y., 295; *Wright* v. *Brown*, 67 Id., 4; *Mitchell* v. *Worden*, 20 Barb., 253; *Brown* v. *Montgomery*, 20 N. Y., 287.) In addition to those facts, there must be evidence sufficient to satisfy the jury, either of an actual intent on the part of the purchaser to get possession of the goods without design to pay for the same then, or at the maturity of the credit, or that being embarrassed and insolvent and having knowledge of those facts, he had no reasonable hopes and did not believe that by continuing his business he could retrieve his fortunes and make payment for the goods purchased. A trader who is hopelessly insolvent and knows that

he cannot pay his debts and that he must fail in business and thus disappoint his creditors, cannot honestly take advantage of a credit, induced by his apparent prosperity, and thus obtain property which he has every reason to believe he can never pay for. The necessary result of a purchase under such circumstances will be to cheat and defraud the vendor, and the intention to cheat may properly be found therefrom, by the jury, in an action of this character. This is the substance of what was said in a case reported anonymously in 67 N. Y., 598. The fact that Mathias was indebted in the sum of $37,000 borrowed money was put in evidence on the part of the plaintiff, for the purpose of establishing not only his insolvency but the intention not to pay for the plaintiff's goods, and that he acted without reasonable hope of retrieving his condition, and without belief that he could possibly tide over his embarrassments. In answer and in explanation of the fact of this indebtedness for borrowed money, he proposed to show how much of it was due to personal friends who were willing to aid him by loans with a view to saving him from bankruptcy. This certainly seems to be competent upon the question of his belief in his capacity to continue in business and meet his purchases. For if he could show to the satisfaction of the jury that the borrowed money mentioned was owing to persons who would not press their claims, but would extend credit and give lenity to enable him to get through his embarrassments, that was a fact justly to be considered as bearing upon his intention and expectations at the time of purchasing the plaintiff's goods. So, the fact that none of his creditors were pressing him for the debts owing to them, would be another proper subject for consideration as to his belief and intent. Both of these matters bear with greater or less force upon the real question to be determined by the jury, and the refusal to permit him to testify in respect to them seems to us, very clearly, to have been an error fatal to the recovery. He testified that he had at the time of this purchase promises of loans to enable him to continue his business, and he was allowed to state some persons who had made promises of that kind. We do not see why he ought not to have been permitted to state what other persons had also promised to lend him money. A trader in business, who has the assurances of his friends,

that he can call upon them for loans in the time of pressure or embarrassment, certainly has a right, if those assurances are made in good faith, to believe that by such means he can avoid any serious or fatal difficulty in continuing his business. It is not at all uncommon, in time of sudden pressure or panic, that men in large business are compelled to depend upon promises or assurances of this kind, and the fact that they do so, if it be established to the satisfaction of the jury, is some evidence at least to meet the inference that their continuing to make purchases of goods is without any belief or expectation of passing safely through such periods of embarrassment. It is not for us to consider what weight the jury might or might not have given to the evidence. We are satisfied that it was competent and being competent it should have been received and submitted to the jury, and the refusal to receive it was such error as requires us to reverse the judgment, and order a new trial with costs to abide the event. Ordered accordingly.

BARRETT, J., concurred.

Present—DAVIS, P. J., and BARRETT, J.

Judgment reversed; new trial ordered; costs to abide event.